

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXES**
**HOUSTON DIVISION**

ENTERED
04/06/2021

| | | |
|---|---|---|
| **IN RE:** | § | |
| **KYLE KINCAID WILLIAMS,** | § | **CASE NO: 19-32784** |
| Debtor. | § | |
| | § | **CHAPTER 13** |
| | § | |
| | § | |
| **KYLE KINCAID WILLIAMS** | § | |
| **and** | § | |
| **RENEE ARCEMONT WILLIAMS,** | § | |
| Plaintiffs, | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 19-3683** |
| | § | |
| **PENNEY ELAINE FARRIS** | § | |
| **and** | § | |
| **MATTHEW FARRIS** | § | |
| **and** | § | |
| **PATRICK FARRIS** | § | |
| **and** | § | |
| **GARY LYNN LAUGHLIN,** | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Much like the timeless "The Song That Doesn't End," litigation over the property at issue in this case "goes on and on, my friends."[1]  Defendants Penney Elaine Farris, Matthew Farris, and Patrick Farris seek entry of an order granting partial summary judgment as to (i) Plaintiffs Kyle Williams and Renee Arcemont Williams' claims for turnover and fraudulent transfer and (ii) Defendants'[2] counter claims for suit to quiet title and declaratory relief as it pertains to the property located at 9706 Ellen Street, Baytown, Chambers County Texas.  A hearing was held on the Motion on March 29, 2021.

---

[1] SHARI LEWIS, *The Song That Doesn't End*, *on* LAMB CHOP'S SING-ALONG, PLAY-ALONG (A&M Records 1992).
[2] Herein, "Defendants" refers only to Penney Elaine Farris, Matthew Farris, and Patrick Farris.  Gary Lynn Laughlin did not file an answer to Kyle Kincaid Williams and Renee Arcemont Williams' complaint, nor did he appear in this adversary proceeding.

For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion for Partial Summary Judgment and grants Defendants' counter claims for suit to quiet title and declaratory relief.  Kyle Kincaid Williams and Renee Arcemont Williams's cause of action for turnover pursuant to 11 U.S.C. § 542(a): (i) regarding the promissory note in the amount of $237,008.42 executed by Penney Elaine Farris and Ken Farris and Gary Laughlin in partial payment of the purchase price of real property located at 9706 Ellen Drive, Baytown, Texas 77521, is not dismissed and will proceed to trial solely as the issue pertains to whether Kyle Kincaid Williams and Renee Arcemont Williams are entitled to such funds; and (ii) regarding the remainder of Kyle Kincaid Williams and Renee Arcemont Williams's claims for turnover are dismissed with prejudice.  Kyle Kincaid Williams and Renee Arcemont Williams's cause of action for voidance of a fraudulent transfer pursuant to 11 U.S.C. §§ 544(b)(1) and 548, and Texas Business and Commerce Code sections 24.005(a) and 24.006(a)–(b) is dismissed with prejudice.  Kyle Kincaid Williams and Renee Arcemont Williams's objection to Penney Elaine Farris, Matthew Farris, and Patrick Farris's Proof of Claim Number 8 will proceed to trial.

Penney Elaine Farris, Matthew Farris, and Patrick Farris's counterclaim for suit to quiet title to the real property located at 9706 Ellen Drive, Baytown, Texas 77521 is granted.  The lien created by Kyle Kincaid Williams and Renee Arcemont Williams's Abstract of Judgment in the amount of $477,380.47, plus pre-judgment interest at a rate of 5% per annum commencing on December 6, 2006, and attorney's fees in the amount of $35,000, filed for record in Chambers County on July 20, 2009, with the County Clerk of Chambers County, under document number 2009-46382, is invalid and unenforceable as to the real property located at 9706 Ellen Drive, Baytown, Texas 77521, and title is quieted in Penney Elaine Farris, Matthew Farris, and Patrick Farris. Kyle Kincaid Williams and Renee Arcemont Williams, and any person claiming under them has

no estate, right, title, lien, or interest in or to the real property or any part of such property.

Penney Elaine Farris, Matthew Farris, and Patrick Farris's counterclaim for declaratory relief is granted in part and denied in part: (i) Penney Elaine Farris, Matthew Farris, and Patrick Farris's request for declaratory relief that they own 9706 Ellen Drive, Baytown, Texas 77521 free and clear of all claims asserted by Kyle Kincaid Williams and Renee Arcemont Williams's, and Kyle Kincaid Williams and Renee Arcemont Williams have no legal or equitable interest in the 9706 Ellen Drive, Baytown, Texas 77521 property whatsoever is granted; (ii) Penney Elaine Farris, Matthew Farris, and Patrick Farris's request for declaratory relief regarding whether all Notices or other Instruments that Kyle Kincaid Williams and Renee Arcemont Williams and/or their court-appointed receivers have recorded in the Official Public Records of Real Property of Chambers County, Texas and/or served on Stewart Title Company, the escrow officer, and any other persons relating to 9706 Ellen Drive, Baytown, Texas 77521 are null and void for all purposes is granted; and (iii) Penney Elaine Farris, Matthew Farris, and Patrick Farris's request for declaratory relief regarding whether the escrow officer may proceed to record the Laughlin Release of Lien[3] in the Official Public Records of Real Property of Chambers County Texas is denied and is reserved for trial.

The remainder of Kyle Kincaid Williams and Renee Arcemont Williams's claims and Penney Elaine Farris, Matthew Farris, and Patrick Farris's counterclaims will be resolved by final trial on the merits. All other relief is denied.

## I. Background Facts and Procedural History

### A. Uncontested Factual History

1. On February 6, 2002, Gary and Melanie Laughlin purchased 9706 Ellen Street, Baytown, Chambers County, Texas ("*Property*").[4]

---

[3] ECF No. 27 Ex. 13.
[4] ECF No. 28 at 2 (citing ECF No. 26 Ex. 1); *see also* ECF No. 35 at 4–5.

2.  On June 18, 2004, Gary and Melanie Laughlin obtained a loan secured by a First Lien Deed of Trust from AmCap Mortgage, Ltd., to build their home on the Property.  They entered into a Mechanic's Lien Contract to build the home; the lien created therein was assigned to AmCap Mortgage, Ltd.[5]

3.  In 2005, after the Texas Gulf Coast suffered substantial hurricane damage, Plaintiff Kyle Williams ("*Williams*") began working with Gary Laughlin ("*Laughlin*") and others undertaking hurricane damage abatement work in the Gulf Coast area.[6]  Williams also met Ken Farris in 2004 or 2005 at a motorcycle race track.[7]

4.  On March 16, 2009, Plaintiffs were awarded a $477,380.47 judgment plus $35,000 in attorney's fees and pre-and-post judgment interest against Laughlin and others in Cause No. 2006-77415 – *Kyle Williams v. Abatement Incorporated, Alan Manring and Gary Laughlin*, in the 127th District Court, Harris County, Texas ("*State Court Action*").[8]  The judgment stemmed from a soured business relationship between Williams, Laughlin, and others.[9]

5.  On July 20, 2009, Plaintiffs recorded an abstract of judgment in Chambers County, Texas ("*Abstract of Judgment*").[10]

6.  On August 7, 2009, Laughlin filed for bankruptcy in the Southern District of Texas.[11]  In that bankruptcy, Laughlin included the Property in Schedule A and claimed the Property as exempt in Schedule C.[12]

7.  On November 8, 2009, Plaintiffs filed a Proof of Claim in the Laughlin Bankruptcy Case with the Abstract of Judgment attached and incorporated therewith.[13]

8.  Plaintiffs did not file an objection to Laughlin's claimed homestead exemption.[14]

9.  On November 11, 2009, Williams initiated an adversary proceeding in Laughlin's bankruptcy case and after a trial on the merits, the court ruled in favor of Williams, awarding him a non-dischargeable judgment in the amount of $576,785.40 in actual damages plus post-judgment interest and costs of court ("*Bankruptcy Court Judgment*").[15]

10.  On September 12, 2012, the Bankruptcy Court Judgment was domesticated in the 129th

---

[5] ECF No. 28 at 2 (citing ECF No. 26 Ex. 2).
[6] ECF No. 35 at 2.
[7] ECF No. 34 Ex. 24, at 38.
[8] ECF No. 28 at 2; ECF No. 35 at 2.
[9] ECF No. 35 at 2.
[10] ECF No. 34 Ex. 4.
[11] ECF No. 28 at 2–3; ECF No. 35 at 3.  Gary Laughlin's bankruptcy is under Case No. 09-35842.
[12] ECF No. 34 Ex. 5.
[13] ECF No. 34 Ex. 6.
[14] ECF No. 28 at 3.
[15] ECF No. 28 at 3; ECF No. 35 at 3; ECF No. 34 Ex. 7.

District Court of Harris County, Texas.[16]

11. On December 5, 2014, Gary and Melanie Laughlin divorced.[17]

12. On April 14, 2015, Melanie deeded her interest in the Property to Laughlin and Laughlin conveyed the Property to Penney Farris and her husband, Ken Farris ("*Farrises*").[18]  At the time it was conveyed, the Chambers County Appraisal District valued the Property at $495,160.[19]  On the same date, the Farrises executed a note, promising to pay $237,008.42 to Laughlin ("*Farris Note*")[20] and tendered $33,613.49 to Laughlin for the balance of the purchase price, plus $22,660.65 for pro-rated property tax and closing costs.[21]  Laughlin also executed a release of lien on the same day.[22]

13. On October 30, 2015, Williams filed his Ex Parte Motion for Turnover and Appointment of Receiver Pursuant to § 31.002 of the Texas Civil Practice & Remedies Code in Cause No. 2012-53113, *Kyle Williams v. Gary Laughlin,* in the 129th District Court of Harris County, Texas ("*State Court Receivership Suit*").[23]

14. On December 7, 2015, Williams succeeded in the State Court Receivership Suit and a receiver was appointed.[24]

15. On December 15, 2015, an interest in the Farris Note was claimed by the receiver and subjected to the receiver's authority.[25]  Notice was issued.[26]

16. On May 20, 2017, Ken Farris died and his interest in the Property passed pursuant to a family settlement agreement, giving Penney Elaine Farris, Matthew Farris, and Patrick Farris ("*Defendants*") an interest in the Property.[27]

17. On April 12, 2018, Defendants filed suit in the 253rd District Court of Chambers County, Texas, to, inter alia, quiet title to the Property in Defendants in Cause No. 18DCV0252, *Penney Farris, et al v. Kyle Williams, et al*.[28]

18. On April 11, 2019, the state court receiver filed another suit in state court alleging that

---

[16] ECF No. 34 Ex. 18, at 1 (referencing Cause #2012-53113; *Kyle Williams v. Gary Laughlin*, in the 129th District Court, Harris County, Texas, which was not provided by Plaintiffs as an exhibit).
[17] ECF No. 28 at 4; ECF No. 35 at 4; ECF No. 34 Ex. 8.
[18] ECF No. 28 at 4; ECF No. 35 at 4.
[19] ECF No. 34 Ex. 17, at 23.
[20] ECF No. 28 at 4; ECF No. 35 at 5.
[21] ECF No. 35 at 5; ECF No. 34 Ex. 14, at 1.
[22] ECF No. 28 at 4; ECF No. 35 at 5–6; ECF No. 34 Ex. 15.
[23] ECF No. 28 at 5; ECF No. 26 Ex. 15.
[24] ECF No. 28 at 5; ECF No. 35 at 4; ECF No. 34 Ex. 18.
[25] ECF No. 28 at 5; ECF No. 35 at 4; ECF No. 26 Ex. 17.  Stephen Mendel replaced the original receiver, Lisa White Watkins, in January 2016.
[26] ECF No. 26 Ex. 17.
[27] ECF No. 28 at 5–6.
[28] ECF No. 28 at 6 (citing ECF No. 26 Ex. 19).

Laughlin's conveyance of the Property to the Farrises was fraudulent.[29]

19. On May 16, 2019, Plaintiffs filed their chapter 13 bankruptcy petition.[30]

## B. Procedural History

Williams, and as next friend for Renee Arcemont Williams,[31] Plaintiffs in this case, filed the instant adversary proceeding ("*Complaint*").[32]   In the Complaint, Plaintiffs pled the following causes of action: (1) turnover pursuant to 11 U.S.C. § 542(a); (2) fraudulent transfer; and (3) objection to claim against Penney Elaine Farris, Matthew Farris, Patrick Farris, and Gary Lynn Laughlin[33]  Gary Lynn Laughlin never filed a response to Plaintiffs' Complaint nor did he make an appearance in this case.  Defendants, which solely include Penney Elaine Farris, Matthew Farris, and Patrick Farris for purposes of this Memorandum Opinion, filed an answer, and asserted the following counterclaims: (1) quiet title; (2) slander of title; (3) tortious interference with contractual relations; and (4) request for declaratory judgment.[34]  Plaintiffs never filed an answer to Defendants' counterclaims.

On November 16, 2020, Defendants timely filed their Motion for Partial Summary Judgment ("*Motion*"),[35] memorandum of law supporting that motion,[36] and a statement of facts undisputed by Defendants.[37]   On December 16, 2020, Plaintiffs timely filed their response to

---

[29] ECF No. 35 at 7.

[30] Citations to Debtor Kyle Kincaid Williams's Bankruptcy case, 19-32784, shall take the form "Bankr. ECF No. —." Bankr. ECF No. 1.  Plaintiff Renee Arcemont Williams was dismissed from the bankruptcy case on September 4, 2019.  Bankr. ECF No. 49.

[31] Debtor and Renee Arcemont Williams are a married couple.  Plaintiffs' Complaint indicates that the money embezzled by Laughlin was community property.  ECF No. 4 at 4.

[32] ECF No. 4

[33] *Id.*

[34] ECF No. 17.

[35] ECF No. 26.

[36] ECF No. 27.

[37] ECF No. 28.

Defendants' Motion,[38] a brief in opposition,[39] exhibits in support,[40] and their own statement of facts.[41]  Plaintiffs also filed a response to Defendants' statement of undisputed facts[42] and later amended that response.[43]

## II.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[44]  While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[45]  Plaintiffs' causes of action under 11 U.S.C. §§ 542(a), 544(b)(1), and 548 arise under title 11 and Plaintiffs' fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act arise in a case under title 11.[46]  Plaintiffs' claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (H).  Conversely, Defendants' counterclaims to quiet title and seek declaratory judgment under the Texas Declaratory Judgment Act, are "related to a case under title 11" and non-core because they do not invoke a substantive right created by the Bankruptcy Code and could exist outside of bankruptcy.[47]  To issue a final order as to Defendants' counterclaims, both parties must consent to this Court doing so.

---

[38] ECF No. 29.

[39] ECF No. 32.

[40] ECF No. 34.

[41] ECF No. 35.

[42] ECF No. 30.

[43] ECF No. 33.

[44] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

[45] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[46] *See* 28 U.S.C. § 157(b)(1).

[47] *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.").

Pursuant to Federal Rule of Bankruptcy Procedure 7008, "[i]n an adversary proceeding before the bankruptcy court, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court." Here, Plaintiffs consented to the entry of final orders and judgments in their Complaint, adhering to Rule 7008.[48] Defendants consented to this Court's jurisdiction and entry of final orders in their Motion.[49] In response to Defendants' Motion, however, Plaintiffs challenged the jurisdiction of this Court and its authority to enter a final order solely as to Defendants' counterclaims, providing no support for their proposition that this Court lacks jurisdiction or the authority to enter a final order or judgment.[50] Despite that challenge, Plaintiffs never filed a notice withdrawing their original consent to entry of final orders or judgments by this Court. Accordingly, the parties consented, and this Court has the constitutional authority to enter a final judgment.

Alternatively, even if Plaintiffs did not explicitly consent, they impliedly consented to adjudication of this dispute by this Court, giving this Court the constitutional authority to enter a final judgment as to Defendants' counterclaims.[51] First, this Court ordered the parties to enter a Notice of Consent or Non-Consent as to this Court's entry of final orders or judgments on non-core matters no later than April 9, 2020.[52] Neither party filed such notice by the deadline. Second, Plaintiffs filed their Complaint in this Court challenging Defendants' interest in the Property and appeared before this Court for two hearings before making any indication that they did not consent

---

[48] ECF No. 4.

[49] ECF No. 27

[50] ECF No. 29 at 2; ECF No. 32 at 8.

[51] *Sharif*, 135 S. Ct. at 1947 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[52] ECF No. 22.

to entry of a final order or judgment on non-core matters by this Court.[53]  Third, after Defendants detailed their counterclaims in their answer to Plaintiffs' Complaint,[54] Plaintiffs and Defendants filed a joint discovery plan wherein Plaintiffs asserted federal jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334, raising no challenges to this Court's jurisdiction over Defendants' counter-claims.[55]  Plaintiffs failure to file their Notice of Consent or Non-Consent by the deadline pre-scribed and their appearances and actions before this Court without objecting to this Court's con-stitutional authority to enter a final order or judgment constitutes implied consent.

Nevertheless, adjudication of Defendants' Motion for Partial Summary Judgment only re-quires this Court to enter an interlocutory order, not a final order or judgment, because "[a] partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated."[56]  This Court may enter an interlocutory order even where the Court does not have authority to issue a final order or judgment.[57]

Finally, venue is governed by 28 U.S.C. §§ 1408 and 1409.  Venue is proper because the Court is currently presiding over Plaintiff Kyle Williams's underlying bankruptcy.[58]

### III.  Evidentiary Objections

In support of their Motion, Defendants submitted twenty-five exhibits for this Court's re-view.[59]  Plaintiffs object to Defendants' exhibits number 7 and 21.[60]  As to Defendants' Exhibit 7,

---

[53] See ECF Nos. 4, 13, 21.
[54] ECF No. 17.
[55] ECF No. 19 at 4.
[56] *Olstowski v. Petroleum Analyzer Co. (In re Atom Instrument Corp.)*, 478 B.R. 252, 255 (Bankr. S.D. Tex. 2012) (citing *West v. Peterson (In re Noram Res., Inc.)*, 2012 Bankr. LEXIS 2991, at *3–4 (Bankr. S.D. Tex. July 2, 2012)).
[57] *In re Atom Instrument Corp.*, 478 B.R. at255.  The Advisory Committee Notes to Rule 60(b) of the Federal Rules of Civil Procedure explain that "interlocutory judgments are not brought within the restrictions of this rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R. CIV. P. 60(b) advisory committee's note.
[58] *See* Bankr. ECF No. 1.
[59] ECF No. 27 at 3–4.
[60] ECF No. 32 at 7.

Plaintiffs contend that the exhibit is not the best evidence because the exhibits attached to the original proof of claim are not included, making the exhibit incomplete.[61]  Plaintiffs submit Plaintiffs' Exhibit 6 as a complete rendition of the proof of claim filed as Defendants' Exhibit 7.[62]  In their sur-reply, Defendants do not address Plaintiffs' objection to Defendants' Exhibit 7.[63]  Nevertheless, Plaintiffs misunderstand the best evidence rule.  Federal Rule of Evidence 1002 says "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Here, Plaintiffs' objection is not that Defendants must submit the original proof of claim because they are trying to prove the content of that claim.  Thus, the best evidence rule is not implicated.  At best, Federal Rule of Evidence 106 is implicated but not asserted.  Plaintiffs' objection is overruled.  Defendants' Exhibit 7 is admitted.

Plaintiffs also object to Defendants' Exhibit 21, which is the court reporter's record of a summary judgment hearing in case number 18DCV0252 in the 253rd District Court in Chambers County, Texas.[64]  Plaintiffs argue that the exhibit is hearsay, irrelevant, and merely attorneys' arguments, not evidence.[65]  Defendants counter that the exhibit is not offered for the attorneys' arguments made at trial, but rather for the judge's ruling on the record.[66]  Defendants contend that the exhibit is a certified transcript of a court proceeding that is relevant because it shows that a state court already decided that the Property was Laughlin's homestead and that therefore, the Plaintiffs' judgment lien did not attach when the Property was sold to the Farrises.[67]

Plaintiffs' first ground for objection is that Defendants' Exhibit 21 is not relevant, and

---

[61] *Id.*
[62] *Id.*
[63] ECF No. 43 at 2.
[64] ECF No. 32 at 7; ECF No. 26 Ex. 21.
[65] ECF No. 32 at 7.
[66] ECF No. 43 at 2.
[67] *Id.*

Plaintiffs cite to Federal Rule of Civil Procedure 402.[68]  Plaintiffs argue that the exhibit is "inflam-matory and irrelevant to any issue in the case at bar and it has no relevance under any theory pled by Defendants."[69]  Defendants counter that the exhibit is relevant because it demonstrates that a court has already decided the Property was Laughlin's homestead and that the Plaintiffs' judgment lien did not attach when the Property was sold to the Farrises.[70]

Federal Rule of Evidence 401 says that evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence and the fact is one of consequence in deter-mining the action.  Whether the Property was Laughlin's homestead at the time he sold it to the Farrises is at the heart of this case.  The issue is that Defendants' Exhibit 21 does not make it more or less probable that the Property was Laughlin's homestead.  This Court is not bound by the factual findings of another court.[71]  Moreover, Defendants never cite to Exhibit 21 in their Motion, their statement of facts, or their sur-reply to Plaintiffs' response to their Motion.[72]  Accordingly, because Defendants' Exhibit 21 in no way makes it more or less probable that the Property was Laughlin's homestead and that Plaintiffs' judgment lien attached to the Property, particularly where Defendants have not used it to support either of those contentions, Plaintiffs' objection to Defendants' Exhibit 21 is sustained.  Defendants' Exhibit 21 is not admitted.  This Court need not address Plaintiffs' other two grounds for objection to Defendants' Exhibit 21.  Pursuant to Federal Rule of Evidence 402, irrelevant evidence in not admissible.  Analyzing the other two grounds would be futile.

## IV.  Summary Judgment Standard

---

[68] ECF No. 32 at 7.
[69] ECF No. 45 at 2.
[70] ECF No. 43 at 2.
[71] *In re: HL Builders, LLC*, 2020 WL 6390103, at *5 (Bankr. S.D. Tex. Oct. 30, 2020).
[72] See ECF Nos. 17, 27, 43.

## A.  Federal Rule 56(c)

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[73]  A genuine dispute of material fact exists if the fact at issue could affect the outcome of the case and based on the evidence, a reasonable jury could return a verdict for the non-moving party.[74]  A movant asserting that a fact cannot be genuinely disputed must cite to particular parts of material in the record evidencing that no genuine dispute is present, or show that an adverse party cannot produce admissible evidence to support that fact.[75]  While the Court may consider other materials in the record, it need only consider those actually cited.[76]

## B.  Burdens of Proof

In a motion for summary judgment, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."[77]  Where the nonmoving party has the burden of proof at trial, the movant must show the court that the nonmoving party lacks evidence of one or more material elements of its case.[78]  This does not require the movant to negate the elements of the nonmovant's case—demonstrating the absence of evidence suffices.[79]  If the movant fails to meet this burden, the summary-judgment motion must be denied.[80]  Conversely, if the movant succeeds in showing a lack of evidence, then the

---

[73] FED. R. CIV. P. 56(a); *see Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (citing *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989)).

[74] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[75] *Prescott v. Wells Fargo Bank, N.A. (In re Prescott)*, 607 B.R. 288, 294 (Bankr. S.D. Tex. 2019) (citing FED. R. CIV. P. 56(c)(1)).

[76] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

[77] *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

[78] *See Celotex Corp.*, 477 U.S. at 325.

[79] *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[80] *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

nonmoving party "must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial."[81]   A court is not to weigh evidence, assess its probative value, or resolve factual disputes, but it must construe the evidence in the light most favorable to the non-moving party.[82]

## V.   Analysis

The parties' dispute centers around property located at 9706 Ellen Street, Baytown, Chambers County, Texas 77521, and a bankruptcy judgment against the original owner of the Property, Gary Laughlin, in favor of Plaintiffs.  The parties disagree as to whether the Property qualified as Laughlin's homestead and passed to Defendants free and clear of Plaintiffs' judgment lien when the Property was deeded to Penney Farris and her late husband, Ken Farris.

It is important to note that there are two judgment liens based on the soured business relationship between Williams and Laughlin—the Abstract of Judgment and the Bankruptcy Court Judgment.  Hereafter, reference to "Plaintiffs' judgment lien" pertains only to the Abstract of Judgment.  Defendants contend that the Bankruptcy Court Judgment was not abstracted or recorded in Chambers County.[83]  Plaintiffs dispute that assertion and respond that the Bankruptcy Court Judgment incorporated the Abstract of Judgment, which was recorded in Chambers County on July 20, 2009.[84]  The Bankruptcy Court Judgment, submitted by both parties as evidence, does not reflect that it was recorded in Chambers County.[85]

Texas Property Code section 52.007 permits the recording and indexing of an abstract of

---

[81] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).
[82] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[83] ECF No. 28 at 4, ¶ 18; *see also* ECF No. 26 Ex. 8.
[84] ECF No. 30 at 3–4, ¶ 18 (citing ECF No. 34 Ex. 7).
[85] ECF No. 26 Ex. 8; ECF No. 34 Ex. 7.

judgment rendered in Texas by a federal court, creating a lien on the real property of a defendant located in the county in which the abstract is recorded.[86]  Under Texas law, the Bankruptcy Court Judgment itself needed to be recorded in Chambers County.[87]  The Bankruptcy Court Judgment was not somehow recorded there merely by its incorporation of the Abstract of Judgment that was recorded nearly three years before the Bankruptcy Court Judgment.  The Bankruptcy Court Judgment was domesticated in Harris County, Texas, on September 12, 2012,[88] but the Property is not located in Harris County.  Therefore, the only lien at issue in this case is the one created by the Abstract of Judgment.

### A.  Whether Defendants are entitled to summary judgment

Defendants move for partial summary judgment as to two of Plaintiffs' claims, turnover pursuant to 11 U.S.C. § 542(a) and avoidance of a fraudulent transfer pursuant to 11 U.S.C. § 544(b)(1), 11 U.S.C. § 548, and Texas Business and Commerce Code sections 24.005(a) and 24.006(a)–(b).  Defendants also seek partial summary judgment on their counterclaims to quiet title to the Property and a declaratory judgment that Defendants are the owners of the Property, free and clear of Plaintiffs' claims.[89]

Plaintiffs bear the burden of proof at trial for turnover pursuant to § 542[90] and fraudulent transfer pursuant to §§ 544(b)(1) and 548, and Texas Business and Commerce Code sections 24.005(a) and 24.006(a)–(b). [91]  Defendants, therefore, must show the absence of a genuine issue

---

[86] *Tanner v. McCarthy*, 274 S.W.3d 311, 318 (Tex. App.—Houston [1st Dist.] 2008, no pet.).
[87] TEX. PROP. CODE § 52.007.
[88] ECF No. 34 Ex. 18, at 1.
[89] ECF No. 27 at 2, ¶ 6.
[90] *See Turner v. Avery*, 947 F.2d 772, 774 (5th Cir. 1991).
[91] *In re Donnell*, 357 B.R. 386, 396 (Bankr. W.D. Tex. 2006) ("The burden of proof in such an action lies with the party seeking turnover.") (citing *Turner*, 947 F.2d at 774 (finding that the burden of proof was on the trustee as the representative of the bankruptcy estate in the turnover action)); *Jenkins v. Chase Home Mortg. Corp. (In re Maple Mortg.)*, 81 F.3d 592, 596 (5th Cir. 1996) ("[T]he trustee has the burden of proving the elements of a fraudulent transfer.") (citing *In re McConnell*, 934 F.2d 662, 665 n.1 (5th Cir. 1991)).

of disputed fact as to one or more material elements of Plaintiffs' claims that entitles Defendants to judgment as a matter of law.[92]  If successful, the burden shifts to Plaintiffs to identify specific record evidence and articulate precisely how that evidence supports Plaintiffs' claims, to defeat summary judgment.[93]

### 1.  Plaintiffs' claim for turnover pursuant to 11 U.S.C. § 542

Section 542(a) provides:

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[94]

Under § 363, "[t]he trustee . . . may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Property of the estate is defined by § 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  Property interests held by a debtor at the time of filing are determined by reference to state law.[95]  Federal bankruptcy law establishes the extent to which those state property rights are property of the estate.[96]

As discussed more fully below, Plaintiffs claim the Property is part of Plaintiff Kyle Williams's bankruptcy estate pursuant to § 541 because Laughlin's homestead protection never extended to the entire Property or, in the alternative, Laughlin waived or abandoned his homestead.[97]  Plaintiffs also claim that Laughlin never used the proceeds from the sale thereof to purchase

---

[92] *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

[93] *See Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 869 (S.D. Tex. 2019) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).

[94] 11 U.S.C. § 542(a).

[95] *Burrell v. Auto-Pak-USA, Inc. (In re Burrell)*, 2012 U.S. Dist. LEXIS 121323, at *16 (S.D. Tex. Aug. 27, 2012) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.")). *Butner* was a ruling pre-BAPCPA so was superseded by statute, but courts have consistently cited it for the proposition that property interests are determined based on state law unless there is controlling federal law. See *UTSA Apts. L.L.C. v. UTSA Apts. 8, L.L.C. (In re UTSA Apts. 8, L.L.C.)*, 886 F.3d 473, 487 (5th Cir. 2018).

[96] *In re Burrell*, 2012 U.S. Dist. LEXIS 121323, at *16 (citing *Mitchell v. BankIllinois (In re Mitchell)*, 316 B.R. 891, 896 (S.D. Tex. 2003)).

[97] ECF No. 4 at 7–8; ECF No. 32 at 16–17.

another homestead.[98]  Those alleged facts, Plaintiffs contend, allowed Plaintiffs' judgment lien to attach to the Property.[99]  The Farrises,[100] they continue, purchased the Property with actual or constructive notice of the judgment lien and thus, purchased the Property subject thereto.[101]  Defendants counter that Laughlin established his homestead rights by filing the appropriate homestead exemption documents and occupying the Property until shortly after he conveyed it to the Farrises.[102]  Defendants conclude that the Property passed to the Farrises free and clear of Plaintiffs' judgment lien.[103]

### a.  Homestead character of the Property

#### i.  Whether the Property was validly exempt under Texas homestead laws

In their Motion, Defendants contend that Laughlin continuously maintained his homestead exemption and cite *Hankins* for the proposition that "[a] judgment debtor may sell a homestead 'and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor.'"[104]  Because the Property was protected by Laughlin's homestead exemption at all times, Defendants maintain that they own the Property free and clear of any interest Plaintiffs claim to have.[105]

Plaintiffs respond that Laughlin's homestead exemption should be denied because although Texas homestead protections are vast, they are "not a sanctuary for crooks and embezzlers."[106]  Plaintiffs allege that beginning in 2005, Laughlin and Williams worked together for several years

---

[98] ECF No. 4 at 7–8; ECF No. 32 at 16–17.

[99] ECF No. 4 at 7–8; ECF No. 32 at 16–17.

[100] The Property was originally purchased by Penney and Ken Farris.  Subsequently, Ken Farris died and the Defendants, who include Ken Farris's wife Penney Farris, and his two sons, Matthew and Patrick Farris, became the joint owners of the Property.

[101] ECF No. 4 at 8.

[102] ECF No. 27 at 6–7, 9.

[103] ECF No. 27 at 6–7.

[104] *Id.* at 7 (citing *Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)).

[105] ECF No. 27 at 6–7.

[106] ECF No. 32 at 13.

undertaking damage abatement work, during which time Laughlin unlawfully took funds belonging to Plaintiffs.[107]   A finding, they allege, made by the jury in the State Court Action and the Bankruptcy Court Judgment.[108]   Laughlin, Plaintiffs continue, used those embezzled funds to help acquire the Property, pay the mortgage on the Property, and make improvements to the Property by constructing a pool and deck.[109]   Citing several cases, Plaintiffs argue that homestead protection can never shelter fraudulently acquired funds and therefore urge this Court to impose a constructive trust or equitable lien on the Property and proceeds from the sale of the Property to the Farrises.[110]

As movants, Defendants bear the initial burden to show the court that there is no evidentiary support for one or more material elements of Plaintiffs' claim for turnover pursuant to 11 U.S.C. § 542.[111]   An essential element of Plaintiffs' claim for turnover is that the Property is property of the estate pursuant to 11 U.S.C. § 541 and subject to turnover.   Defendants offer an authenticated appraisal from the Chambers County Appraisal District purporting to show that the Property was owned by Gary Laughlin and classified as a homestead for the 2005 to 2015 tax years.[112]   That document constitutes *prima facie* evidence that Laughlin's homestead exemption was valid.[113]   Additionally, Defendants highlight Penney Farris's deposition testimony that Laughlin

---

[107] ECF No. 35 at 2.  Plaintiffs plead that these funds were community property of Kyle Williams and Renee Arcemont Williams.

[108] *Id.* (citing ECF No. 34 Ex. 3, at 6–8); *see also* ECF No. 34 Ex. 3, at 1–2 (offering the Bankruptcy Court's Final Judgment, "finding specifically that the standards for non-dischargeability have been met for *embezzlement* pursuant to 11 U.S.C. § 523(a)(4) and that the standards for non-dischargeability have been met for willful injury pursuant to 11 U.S.C. § 523(a)(6).").

[109] ECF No. 32 at 15–16.

[110] ECF No. 32 at 15–19 (citing *First State Bank of Ellinger v. Zelesky*, 262 S.W. 190 (Tex. Civ. App.—Galveston 1924); Bramson *v. Standard Hardware*, 874 S.W.2d 919, 928 (Tex. App.—Fort Worth 1994, writ denied); *Gamble-Ledbetter v. Andra Group, L.P.*, 419 B.R. 682, 700–03 (Bankr. E.D. Tex. 2009); *Smith v. Green*, 243 S.W. 1006, 1007–08 (Tex. App.—Amarillo 1992, writ ref'd); *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App.—El Paso 1967, writ ref'd n.r.e.); *Bush v. Gaffney*, 84 S.W.2d 759, 762 (Tex. Civ. App.—San Antonio 1935, no writ)).

[111] *See Celotex Corp.*, 477 U.S. at 325.

[112] ECF No. 26 Ex. 3.

[113] *See In re Michelena*, 620 B.R. 570, 578 (Bankr. S.D. Tex. 2020).

was living on the Property when the Farrises viewed it before purchasing the Property and that there was furniture and personal belongings in the house.[114]  Penny Farris also testified that Laughlin continued to live at the Property for about a month after the sale was finalized.[115]  And, Defendants show that Williams recognized the homestead nature of the Property in the State Court Receivership Suit and interrogatories answered during discovery in this case.[116]

Although the evidence is scant, Defendants have successfully demonstrated that Laughlin's homestead exemption was valid and co-extensive with the value of the Property.  As Defendants correctly articulate, judgment liens on a Texas homestead are generally invalid pursuant to the Texas Constitution,[117] preventing Plaintiffs' judgment lien from attaching to the Property. Thus, the burden shifts to Plaintiffs to identify specific record evidence demonstrating that there is a genuine issue of material fact for trial concerning the Property's homestead character.[118]  Plaintiffs challenge Laughlin's homestead exemption on the Property on the basis that Laughlin allegedly used fraudulently obtained funds to acquire the Property, pay the mortgage on the Property, and improve the Property.[119]  Plaintiffs correctly point out that Texas law prevents a homestead exemption from attaching to a portion of a property purchased, paid for, or improved with unlawfully obtained funds.[120]  Relevant Texas case law holds that "the homestead protection afforded by the Texas Constitution was never intended to protect stolen funds."[121]  "Stolen funds used for the

---

[114] ECF No. 26 Ex. 22, at 11:12–12:1; 17:14–24; 26:2–18.

[115] *Id.* at 27:2–14.

[116] ECF No. 27 at 12–13, ECF No. 26, Exs. 15, 23.

[117] *United States v. Johnson*, 160 F.3d 1061, 1064 (5th Cir. 1998) (quoting TEX. CONST. art. XVI § 50).

[118] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) ("If the movant satisfies its initial burden of demonstrating the absence of a material fact issue, then 'the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial.'") (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[119] ECF No. 32 at 15–16.

[120] *Id.* at 13–14.

[121] *Bransom*, 874 S.W.2d at 928 (citing *Pace v. McEwen*, 617 S.W.2d 816, 818 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ)).

purchase of a homestead or improvement of an existing homestead can never acquire homestead rights as they are held in trust for the rightful owners of the funds."[122]  That fraudulent use, Plaintiffs claim, entitles them to an equitable lien or constructive trust on the Property.[123]

As a preliminary matter, Plaintiffs did not request the imposition of an equitable lien or constructive trust in their Complaint.[124]  Plaintiffs' response to Defendants' Motion is not the appropriate place to request additional relief.  The arguments regarding Plaintiffs' request for imposition of a constructive trust or equitable lien will not be addressed by this Court as those arguments in no way impact whether Plaintiffs are entitled to such relief.  Plaintiffs' failure to request that relief in their Complaint precludes consideration of such relief.

Moreover, Plaintiffs provide no evidence that the Property was acquired with wrongfully obtained funds, and based on the timeline detailed above, no fraudulently obtained funds could have been used to acquire the Property.  The Property was purchased in 2002 and a loan was obtained to build a home on the Property in 2004,[125] before Laughlin and Williams engaged in a business relationship in 2005.[126]  All that remains for consideration is whether embezzled funds were used by Laughlin for mortgage payments and to construct a pool on the Property.

To establish that fraudulent funds were used to pay down the mortgage on the Property, Plaintiffs submit a copy of Laughlin's bankruptcy schedules, reflecting a secured claim of $265,472.36 on the Property[127] and the HUD settlement statement generated when Laughlin sold the Property to the Farrises reflecting what Plaintiffs classify as "the balance of the lien on the first mortgage on the Property" in the amount of $237,008.42.[128]  Finding the difference between those

---

122 *Id.* (citing *Zelesky*, 262 S.W. at 192).
123 ECF No. 32 at 18–19.
124 ECF No. 4.
125 ECF No. 28 at 2 (citing ECF No. 26 Exs. 1, 2); *see also* ECF No. 26 at 4–5.
126 ECF No. 35 at 2.
127 ECF No. 34 Ex. 5.
128 *Id.* Ex. 14.

two amounts, Plaintiffs conclude that "Laughlin paid off $28,463.94 of the principle [sic] on the first mortgage on the Property with embezzled funds" between August 21, 2009, when Laughlin was in bankruptcy, and April 14, 2015, the date the Property was sold to the Farrises.[129]  The HUD statement actually describes the $237,008.42 line item as "Owner finance/Wrap," not a first mortgage.[130]  However, Defendants agree that the balance owed on Laughlin's mortgage at the time of the sale was $237,008.42[131] and under Texas law, a wraparound note typically includes the principal amount of underlying senior notes.[132]

Plaintiffs also argue that the pool and deck on the Property were constructed with funds belonging to Plaintiffs shortly before Laughlin filed for bankruptcy, evidenced by an affidavit by Plaintiffs' attorney, H. Brad Parker, declaring that a pool was built on the Property before Laughlin's bankruptcy case was filed,[133] an authenticated appraisal by the Chambers County Appraisal District reflecting the addition of a pool on the Property,[134] and Laughlin's bankruptcy schedules, which do not list any creditors or pre-petition debt from the pool installation.[135]  Plaintiffs contend that the Chambers County Appraisal District added the pool to the appraisal in 2010 for the tax year 2009.[136]  That is not what the document reflects, however.  The pool is listed on the appraisal for the tax year 2010 and specifically indicates that it was built in 2010.[137]

Defendants counter that Plaintiffs offer no admissible evidence that embezzled funds were used to pay Laughlin's mortgage or construct a pool and deck.[138]  Defendants, on the other hand,

---

[129] ECF No. 45 at 3–4.
[130] ECF No. 34 Ex. 5.
[131] ECF No. 28 at 4.
[132] *Summers v. Consolidated Capital Special Trust*, 1990 Tex. LEXIS 38, at *7 (Tex. 1990).
[133] ECF No. 34 Ex. 22, at 3.
[134] *Id.* Ex. 17 at 14.
[135] ECF No. 32 at 17; ECF No. 34 Ex. 5.
[136] ECF No. 32 at 16–17.
[137] ECF No. 34 Ex. 17, at 14.
[138] ECF No. 43 at 5.

offer Williams's deposition testimony that he did not know how Laughlin paid for the pool or whether it was paid for by Melanie Laughlin as evidence that Plaintiffs' postulations about how embezzled funds were spent is pure speculation.[139]

Plaintiffs failed to satisfy their burden to raise specific evidence demonstrating that Laughlin used embezzled funds to pay his mortgage and improve the Property.  The evidence Plaintiffs offer does establish that Laughlin paid down the principal balance on his mortgage by $28,463.94 from August 2009 to April 2015, but Plaintiffs offer nothing demonstrating that embezzled funds can be traced to Laughlin's mortgage payments.  As for the pool, the bankruptcy schedules, affidavit, and appraisal submitted by Plaintiffs establish that a pool was built around 2009 or 2010, but again, there is no evidence that embezzled funds were traced to the construction of the pool.

Importantly, Federal Rule of Civil Procedure 56(d) governs situations where facts are unavailable to nonmovants.  That Rule requires a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Plaintiffs have not offered such affidavit or declaration.  Plaintiffs merely argue that "most embezzlers do not provide a road map showing the use of monies that they have embezzled."[140]  Where Plaintiffs do not provide specific evidence to establish that embezzled funds can be traced to house payments and property improvements,  there is no genuine material dispute as to whether Laughlin's homestead exemption covered the entire Property.  Absent a genuine dispute as to the homestead character of the Property, Plaintiffs likewise cannot establish that there is a genuine dispute of material fact as to whether the Property is property of Williams's bankruptcy estate.  The entirety of the Property was Laughlin's homestead when he conveyed it to the Farrises and under Texas law,

---

[139] *Id.* (citing ECF No. 34 Ex. 24, at 64:9–14).
[140] ECF No. 45 at 3.

when Laughlin sold the Property, he passed title free of Plaintiffs' judgment lien, and the Farrises can assert that title against Plaintiffs.[141]

### b. Homestead forfeiture by abandonment or alienation

#### i. Whether Laughlin forfeited the homestead character of the Property by abandonment

Plaintiffs alternatively argue that both Melanie and Gary Laughlin abandoned their homestead exemption right in the Property, allowing Plaintiffs' judgment lien to attach.[142]  Defendants bear the burden of directing this Court to an absence of evidence in the record demonstrating that Gary and Melanie Laughlin abandoned the homestead.  If Defendants meet that burden, the burden shifts to Plaintiffs to submit competent evidence that a genuine issue exists as to whether the Property lost its homestead character by abandonment.

"Once property has been dedicated as a homestead, it can only lose such designation by abandonment, alienation, or death."[143]  Abandonment requires that one offer "competent evidence that clearly, conclusively, and undeniably shows that the homestead claimant moved with the intention of not returning to the property."[144]  Texas law unequivocally requires "undeniably clear" evidence "beyond almost the shadow at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption."[145]  Additionally, "to be an abandonment that would subject the homestead property to seizure and sale, there must be voluntary leaving or quitting of the residence."[146]

---

[141] *Hankins*, 500 S.W.3d at 145.
[142] ECF No. 4 at 8.
[143] *Wilcox*, 103 S.W.3d at 472 (citing *Garrard v. Henderson*, 209 S.W.2d 225, 229 (Tex. Civ. App.—Dallas 1948, no writ)).
[144] *Marincasiu*, 441 S.W.3d at 561 (internal marks omitted) (citing *Taylor v. Mosty Bros. Nursery, Inc.*, 777 S.W.2d 568, 569 (Tex. App.—San Antonio 1989, no hist.)); *see also, e.g.*, TEX. CONST. art. 16, § 50; TEX. PROP. CODE § 41.001.
[145] *Florey v. Estate of McConnell*, 212 S.W.3d 439, 444 (Tex. App.—Austin 2006, pet. denied) (quoting *Burkhardt v. Lieberman*, 159 S.W.2d 847, 852 (Tex. 1942)).
[146] *Id.* (citing *King v. Harter*, 8 S.W. 308, 309 (Tex. 1888)).

Defendants successfully demonstrate that the homestead was never abandoned by offering an authenticated appraisal reflecting Laughlin as the owner of the Property and designating the Property as a homestead from 2005 to 2015,[147] a deed from Melanie Laughlin to Laughlin, deeding her interest in the Property to him following their divorce,[148] and deposition testimony of Penney Farris that Laughlin had furniture and personal belongings at the Property and appeared to be living there.[149]   The burden shifts to Plaintiffs to submit competent evidence that a genuine issue exists as to whether the Property lost its homestead character by abandonment.

Plaintiffs' theory is that Laughlin abandoned the house by selling it to one of his alleged creditors, Ken Farris.[150]   Plaintiffs offer an authenticated appraisal from the Chambers County Appraisal District, reasoning that the Property was worth $495,160[151] when Laughlin sold the Property to the Farrises for $298,300 in April 2015.[152]   As part of the purchase price, the Farrises executed a promissory note in the amount of $237,008.42 to be paid within six months of the sale, and paid Laughlin approximately $33,613.49 cash.[153]   Plaintiffs also assert that Laughlin did business, mostly on a cash basis, with Ken Farris several times in the past,[154] and was indebted to Ken Farris at the time Laughlin sold the Farrises the Property.[155]   To establish that Laughlin was indebted to Ken Farris at the time of the sale, Plaintiffs offer deposition testimony from both Penney Farris and Williams that Laughlin once sold Ken Farris a tractor,[156] Williams's deposition testimony that Laughlin and Ken Farris exchanged cash regularly allegedly because "[Laughlin] owed

---

[147] ECF No. 26 Ex. 3.
[148] ECF No. 26 Ex. 10.
[149] ECF No. 26 Ex. 22, at 11:12–12:1; 17:14–24; 26:2–18; 27:2–14.
[150] ECF No. 32 at 19–20.
[151] ECF No. 32 at 19 (citing ECF No. 34 Ex. 17, at 23–24).
[152] *Id.* (citing ECF No. 34 Ex. 14, at lines 101, 401).
[153] *Id.* at 23 (citing ECF No. 34 Ex. 14, at lines 207, 507, 603).
[154] *Id.* at 20 (citing ECF No. 34 Ex. 23, at 49:12–53:6; ECF No. 34 Ex. 24, at 38:2–41:4, 41:25–43:17).
[155] *Id.* at 19; ECF No. 35 at 5.
[156] ECF No. 34 Exs. 21, at 10:7–10:15, 23, at 50:1–50:19.

Ken money,"[157] and Penney Farris's deposition testimony that Ken Farris made house payments on behalf of Laughlin.[158] Taken together, there is some evidence that Laughlin was indebted to Ken Farris at the time the Property was conveyed. Even so, selling the Property at a discounted price to pay off debt does not constitute abandonment of a Texas homestead under Texas law.

Plaintiffs cite to a series of non-binding cases outside the Fifth Circuit for the proposition that a debtor's choice to transfer property to a creditor is a choice not to claim that property as exempt, and conclude that Laughlin forfeited his homestead exemption by selling it the Farrises for approximately $200,000 less than its fair market value.[159] None of these cases interpret the applicable Texas homestead laws, however. Plaintiffs provide no support grounded in Texas law for their contention because none exists. Texas law is clear that a homestead may only be lost by abandonment, alienation, or death;[160] none of which involve sale of the Property to a creditor at a discounted price.

Plaintiffs also cite cases outside the Fifth Circuit interpreting certain provisions of the bankruptcy code to support their argument that Laughlin abandoned his homestead exemption by selling the Property to Ken Farris, an alleged creditor.[161] Those cases hold that a choice to transfer exemptible property to a creditor is a choice not to claim that property as exempt.[162] While that may be true, which this Court need not decide, those cases are inapposite here. There is no evidence in the record that Laughlin was a debtor in bankruptcy when he sold the Property to the

---

[157] ECF No. 34 Ex. 24, at 38:20–41:4.

[158] ECF No. 34 Ex. 21, at 14:5–14:17.

[159] ECF No. 32 at 21 (citing *In re Richards*, 92 B.R. 369, 372 (Bankr. N.D. Ind. 1988) (citing *In re Kewin*, 24 B.R. 158, 161 (Bankr. E.D. Mich. 1982)); *Waldschmidt v. Sanders (In re Sanders)*, 213 B.R. 324, 329 (Bankr. M.D. Tenn. 1997)).

[160] *Wilcox*, 103 S.W.3d at 472 (citing *Garrard*, 209 S.W.2d at 229).

[161] ECF No. 32 at 21–22 (citing *In re Richards*, 92 B.R. at 372 (citing *In re Kewin*, 24 B.R. at 161); *In re Sanders*, 213 B.R. at 329).

[162] *Id.*

Farrises.  Laughlin entered bankruptcy in 2009[163] and the final decree in his bankruptcy was entered in 2012.[164]  The Property was not sold until 2015.  Thus, the Bankruptcy Code is inapplicable, only Texas law applies.  And to reiterate, under Texas law only death, abandonment, or alienation destroy homestead character,[165] not sale to a creditor for a discounted price.  Therefore, even if this Court accepted Plaintiffs' argument that the discounted sales price was to pay off debt, Plaintiffs still do not satisfy their burden to show a triable dispute exists as to whether Laughlin abandoned his homestead by selling it to the Farrises for a discounted price.

Plaintiffs further submit that: (1) the final divorce decree, attached as one of Plaintiffs' exhibits, between Gary and Melanie Laughlin, which required the pair to sell the property with the help of a licensed real estate broker, evidences an intent to abandon the Property;[166] and (2) deeds reflecting Melanie Laughlin's conveyance of the Property to Laughlin and her purchase of a new home evidence her intent to abandon the Property as her homestead.[167]  These arguments, a copy of the divorce decree, and the deeds, do not create a fact issue as to abandonment.  To find abandonment, Texas law requires a voluntary discontinued use of a homestead with the intent never to return.[168]  Melanie Laughlin abandoned the homestead by conveying her interest in the Property and purchasing a new property to occupy,[169] but her actions have no effect on those of Laughlin himself.[170]  It is undisputed that the Property was still listed as a homestead by the Chambers

---

[163] 09-35842, ECF No. 1.

[164] 09-35842, ECF No. 62.

[165] *Wilcox*, 103 S.W.3d at 472 (citing *Garrard*, 209 S.W.2d at 229).

[166] ECF No. 45 at 4.

[167] *Id.* at 5–6.

[168] *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks)*, 2006 U.S. Dist. LEXIS 38383, at *11 (S.D. Tex. June 9, 2006) (citing *Montague v. Nat'l Loan Investors, L.P.*, 70 S.W.3d 242, 248 (Tex. App.—San Antonio 2001, pet denied)).

[169] *In re Parks*, 2006 U.S. Dist. LEXIS 38383, at *11 ("Mere removal from premises occupied as a homestead, even to another state, does not constitute an abandonment so long as no other homestead is acquired and there remains at all times an intention to return and again occupy the property as the family residence.") (quoting *W. Tex. State Bank of Snyder v. Helms*, 326 S.W.2d 47, 49 (Tex. App.—Eastland 1959, no writ)).

[170] *Fairfield Financial Group, Inc. v. Synnott*, 300 S.W.3d 316, 319–23 (Tex. App.—Austin 2009, no pet.) (finding that regardless whether the ex-husband abandoned the property, it remained protected at all times by the ex-wife's undivided homestead interest); *see also, e.g.*, *Salomon v. Lesay*, 369 S.W.3d 540, 555 (Tex. App.—Houston [1st Dist.]

County Appraisal District when it was sold to the Farrises and that Laughlin appeared to occupy the Property until shortly after it was sold to the Farrises.[171]

Plaintiffs failed to submit any competent evidence showing that Laughlin abandoned the Property either as a result of the divorce decree or when he sold it to the Farrises. Accordingly, the Court finds that the Property did not lose its homestead character by abandonment and therefore, no genuine issue of material fact remains for trial.

> ii. <u>Whether Laughlin forfeited the homestead character of the Property by alienation</u>

A Texas homestead cannot lose its designation by "waiver,"[172] as Plaintiffs pled, and Plaintiffs provide no case law to indicate otherwise. This Court interprets Plaintiffs use of "waiver" to mean alienation.

Abandonment is distinct from alienation.[173] When abandonment by discontinuation of use cannot be shown, alienation may nevertheless result in termination of the homestead.[174] Alienation occurs "when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property,"[175] but "[a] subsequent purchaser of homestead property may assert the prior person's homestead protection against a prior lienholder so long as there is no gap between the time of homestead alienation and recordation of his title."[176] However,

---

2012, no pet.) ("[S]o long as real property is a family homestead by virtue of one spouse's intention and use, that property is protected by the homestead exemption, unless abandonment is pleaded and proved."); *Hankins*, 500 S.W.3d at 147 (finding that an ex-husband's undivided homestead interest protected the property at all relevant times and prevented the a judgment lien from attaching because both before and after the divorce, because before the divorce, each spouse has an undivided homestead interest as a family member and after divorce, the ex-husband received the full homestead interest pursuant to the divorce decree and transfer of land).

[171] ECF No. 27 at 9; ECF No. 26, Exs. 3, 22.
[172] ECF No. 4 at 8.
[173] *Resolution Trust Corp. v. Olivarez*, 29 F.3d 201, 206 (5th Cir. 1994) ("Abandonment and alienation of title have frequently been described as distinct methods of extinguishing a homestead interest.").
[174] *Id.* at 207.
[175] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 310 n.8 (5th Cir. 2003) (citing *Olivarez*, 29 F.3d at 206–07).
[176] *Marincasiu*, 441 S.W.3d at 559 (citing *Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied)).

"if there is a gap in between the time of alienation of the homestead and the recordation of the subsequent purchaser's interest," any valid judgment lien will attach to the property.[177]

Defendants provided competent summary judgment evidence demonstrating that the Property was Laughlin's homestead until shortly after it was sold to the Farrises, so the burden shifts to Plaintiffs to show that the sale to the Farrises resulted in alienation of Laughlin's homestead. It is undisputed that the Property was sold to the Farrises, but Plaintiffs do not argue nor do they submit any competent summary judgment evidence that there was any lapse in time between the conveyance and when the Farrises recorded title to the Property. As explained above, a gap between conveyance and recordation is the only way a judgment lien can attach to a homestead by alienation.[178] No genuine issue of material fact remains for trial as to whether the Property lost its homestead exemption by alienation because Plaintiffs failed to submit any competent summary judgment evidence to that point.

Accordingly, because the Property was neither abandoned nor alienated by Laughlin, the Property retained its valid Texas homestead exemption and Defendants can assert Laughlin's Texas homestead exemption against Plaintiffs.

### c. Homestead character of the Property's sales proceeds

Plaintiffs' final argument for turnover is that even if the homestead exemption applied and Laughlin did not abandon or "waive" it, Plaintiffs are nevertheless entitled to the proceeds from the sale.[179] Plaintiffs contend that because the proceeds were not used by Laughlin within six months of the sale for a new homestead, Plaintiffs' judgment lien attached to those proceeds.[180]

---

[177] *Intertex, Inc. v. Kneisley*, 1992 Tex. App. LEXIS 2153, at *5 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (citing *Hoffman v. Love*, 494 S.W.2d 591, 594–95 (Tex. Civ. App.—Dallas 1973, writ ref'd n.r.e.)).

[178] *Id.* at *5 (citing *Hoffman*, 494 S.W.2d at 594–95).

[179] ECF No. 32 at 23–24.

[180] *Id.* (citing Tex. Prop. Code § 41.001(c) ("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.")).

Plaintiffs claim they are entitled to proceeds in the form of: (i) the $33,613.49 cash payment made by the Farrises to Laughlin;[181] (ii) the $237,008.42 Farris Note;[182] and (iii) "the Deep Discount ($200,000), which Gary Laughlin transferred to his friend and business associate, Ken Farris, as part of the fraud to prevent [Plaintiffs] from benefiting from the sale of the Property."[183]

As a preliminary matter, the Court must decide whether the "proceeds" Plaintiffs believe themselves entitled to qualify as proceeds under controlling law.  Texas Property Code section 41.001(c) provides, ". . .  proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."  Proceeds are defined by Black's Law Dictionary as "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale."[184]  While Texas case law does not define "proceeds" for purposes of real estate transactions, it does define "gross sales proceeds" as the monies received before costs are deducted and "net sales proceeds" as the money remaining from a sale once all liens, claims, and encumbrances are paid.[185]  The Court will consider each category Plaintiffs claim to be "proceeds," in turn.

### i.   Whether Plaintiffs' judgment lien attached to the $33,613.49 cash payment

It is undisputed that when Laughlin conveyed the Property to the Farrises, the Farrises paid a portion of the $298,300 sales price with a cash payment of $33,613.49.[186]  Plaintiffs contend,

---

[181] ECF No. 32 at 23.

[182] *Id.* at 23–24.

[183] ECF No. 45 at 6–7.  Plaintiffs refer to the approximately $200,000 difference between the market value of the Property, $495,160, and the sales price, $298,300, as the "Deep Discount".

[184] *Proceeds*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[185] *See, e.g., Wiggains v. Reed (In re Wiggains)*, 535 B.R. 700, 702 (Bankr. N.D. Tex. 2015) ("The Texas Homestead was sold by the Trustee during the early part of the above-referenced bankruptcy case for $3.4 million, netting $568,668.41 of cash proceeds after payment of all liens, claims, and encumbrances."); *In re SCC Kyle Partners, Ltd.*, 2013 Bankr. LEXIS 2439, at *18 (Bankr. W.D. Tex. 2013) ("The gross sales proceeds from the Avail sale was approximately $1.5 million, and Whitney Bank received the net sales proceeds after payment of closing costs and property taxes."); *In re Dupuy*, 2004 Tex. Dist. LEXIS 2684, at *44 (410th Dist. Ct., Montgomery County, Tex. May 13, 2004) ("The net sales proceeds shall be defined as the gross sales prices less the cost of sale and full payment of any mortgage indebtedness or liens on the property.").

[186] *See* ECF No. 35 at 5, ¶ 16; ECF No. 44 at 2, ¶ 16.

and Defendant Penney Farris's deposition testimony reveals, that Laughlin never intended to pur-

chase a new homestead with the monies he received from the sale of the Property.[187] Penney Farris

testified that Laughlin intended to purchase a car hauler and use that as his living quarters.[188]  In

their Motion, Defendants concede that "Laughlin may have waived the homestead nature of the

proceeds from the sale of the Property if he did not utilize the proceeds in 180 days to purchase a

new homestead."[189]  That, however, Defendants continue, does not cause the Property to retroac-

tively lose its homestead character.[190]

      Defendants are correct.  Any claim Plaintiffs have to the $33,613.49 in cash proceeds in no

way affects the homestead character of the Property.  As held above, the Property was Laughlin's

homestead and under Texas law, the Farrises can assert Laughlin's homestead exemption against

Plaintiffs' claim.  Additionally, any recourse for the $33,613.49 Plaintiffs may be entitled to is

against Laughlin, the receiver and possessor of the proceeds, not Defendants.  Laughlin was named

as a defendant in this adversary, but never appeared or filed an answer.[191]  His failure to respond

does not somehow make Defendants liable for the cash proceeds.  Plaintiffs' request for turnover

of the $33,613.49 in cash proceeds is dismissed with prejudice.

      ii.  <u>Whether Plaintiffs' judgment lien attached to the $237,008.42 Farris Note</u>

      Plaintiffs claim that the Farris Note represents proceeds of the sale of the Property  and that

because the note was never paid by the Farrises, Plaintiffs now have the right to demand turnover

of the $237,008.42 plus interest.[192]  Defendants contend that at the time of the State Court Receiv-

ership Suit, when Williams sought turnover of the Farris Note, the note had already been paid in

---

[187] ECF No. 45 at 5 (citing ECF No. 34 Ex. 21, at 12:16–13:7).
[188] ECF No. 34 Ex. 21, at 12:16–13:7.
[189] ECF No. 27 at 12.
[190] *Id.*
[191] ECF No. 4.
[192] ECF No. 24 at 34.

full.[193]  Defendants bear the initial burden to show an absence of evidence proving that the Farris

Note was not paid.

Defendants point to a release of lien executed on October 12, 2015, by CitiMortgage, Inc.,

as proof that the Farris Note was paid.[194]  That release lists Gary and Melanie Laughlin as the

original borrowers and describes the Property, but makes no mention of the Farrises.[195]  All it

demonstrates is that Laughlin's mortgage was paid off, not that the Farris Note was satisfied.[196]

Defendants explain that under the Farris Note, the Farrises were permitted to make payments di-

rectly to Laughlin's mortgage servicer and any such payments were credited against the Farris

Note.[197]  The relevant portion of the Farris Note states:

> [Laughlin] shall, from time to time, upon the request of [the Farrises], provide [the Farrises] with proof of payment of the installments on the ABN AMRO MORT-GAGE GROUP, note.  In the event [Laughlin] fails to timely make such payments, [the Farrises] may elect to pay the installments on the said note directly to ABN AMRO MORTGAGE GROUP, and, if so elected, [the Farrises] shall be entitled to a credit of such amounts paid against the payment on the herein described note.[198]

Defendants' argument at the summary judgment hearing was that the Farrises made payments

directly to Laughlin's mortgage servicer, in satisfaction of the Farris Note.  Defendants directed

the Court to an incomplete and ambiguous portion of Penney Farris's deposition testimony to

demonstrate that the Farris Note was paid.  Defendants' exhibit captures the following exchange

between Penney Farris and the state court receiver, Stephen Mendel:

> Mr. Mendel: After the sale in April of 2015, did you and your husband make any payments to the lender of that property?

> Ms. Farris: Yes.

---

[193] ECF No. 27 at 12.
[194] ECF No. 26 Ex. 14.
[195] *Id.*
[196] *See id.*
[197] *See* ECF No. 26 Ex. 12.
[198] *Id.*

> Mr. Mendel: And what is it that you recall about payments to the lender?
>
> Ms. Farris: My understanding is we paid the note until we had the full money to pay it off.
>
> Mr. Mendel: So what had to happen between April when you acquired it from Mr. Laughlin and until the time that you paid off the lender? What is it that transpired to acquire these extra dollars to pay off the note?
>
> Ms. Farris: We had money to make the monthly payments, so we made the monthly payments.
>
> Mr. Mendel: Right. But at some point you paid off the balance of the note. Can't shake your head for the court reporter.

Defendants' exhibit ends there, cutting off the remainder of the exchange between Mr. Mendel and Penney Farris.  Viewing the evidence in the light most favorable to Plaintiffs, this exchange does not satisfy Defendants' burden to show that the Farris Note was paid in full, either through payments to Laughlin or his mortgage servicer.

The exchange does not identify which note Penney Farris speaks of, to whom "monthly payments" were made, or what the "extra dollars to pay off the note" refers to.  Moreover, at the end of the provided exchange, Mr. Mendel says "[b]ut at some point you paid off the balance of the note."  Penney Farris's response was shaking her head.  The Court cannot determine whether that head shake meant "no, we didn't pay it off" or "yes, we did pay it off."  The exchange is too cryptic for this Court to find that no genuine dispute regarding payment of the Farris Note exists.

If Defendants never paid the Farris Note in full, then the obligation to pay those funds to Laughlin remain Defendants' obligation.  That obligation, by now, has rendered all unpaid funds non-exempt pursuant to Texas Property Code section 41.001(c), allowing Plaintiffs' judgment lien to attach to such proceeds, if any.  Therefore, Plaintiffs' cause of action for turnover pursuant to 11 U.S.C. § 542(a) of the funds owed pursuant to the Farris Note will proceed to trial.

   iii.  <u>Whether Plaintiffs' judgment lien attached to the "deep discount" ($200,000)</u>

Lastly, Plaintiffs posit that the deeply discounted sales price, approximately $200,000, constitutes proceeds of the sale of the Property. This argument is a non-starter. Based on the definitions expounded above, the difference between the market value of the Property and the sales price is not proceeds of a sale of real property.[199] Neither definition of "proceeds" encompasses the difference between the fair market value of property and the price a seller sells it for,[200] and Plaintiffs offer no support to prove otherwise.[201] Thus, no genuine dispute exists as to whether Plaintiffs' judgment lien attached to the deep discount, because that discount is not proceeds.

Even if the deep discount of $200,000 is proceeds, Plaintiffs' argument still fails because it is grounded in pure speculation, not competent evidence. Plaintiffs speculate that the deep discount was given to satisfy a debt Laughlin owed to Ken Farris.[202] Any such argument is foreclosed by Defendant Penney Farris's uncontroverted deposition testimony that the discounted sales price was all the Farrises could afford at the time and that as far as Penney Farris was aware, Laughlin's indebtedness to Ken Farris was only in the amount of a house payment or two for the Property as reflected by the HUD settlement statement.[203] The HUD settlement statement reflects that one "March house payment" in the amount of $1,712.92 was deducted from the $298,300 sales price of the Property.[204] That $1,712.92 debt does not prove that there is a genuine dispute of material fact as to whether Laughlin sold the Property to the Farrises for approximately $200,000 less than its fair market value to satisfy a debt owed to Ken Farris. If the discounted sales price was in exchange for debt owed, the house payment would not have been deducted from the sales price as the deep discount would have covered it under Plaintiffs' theory.

---

[199] See *supra* Section V(A)(1)(c), for a discussion on the definition of proceeds.
[200] See *supra* Section V(A)(1)(c).
[201] ECF No. 43 at 6.
[202] ECF No. 32 at 19.
[203] ECF No. 34 Ex. 21, at 8:8–10:22, 14:5–17.
[204] *Id.* Ex. 14, at line 508.

Lastly, Plaintiffs' unsupported argument that the deep discount was to satisfy a debt owed does not make Penney, Matthew, and Patrick Farris the proper parties to sue because Laughlin was the recipient of the benefit from that discount, not Penney, Matthew, and Patrick Farris.  Laughlin is the proper party to sue, but again, Laughlin did not appear or file an answer in this suit despite being named a defendant.  Laughlin's absence does not make Defendants liable for the sales proceeds.  No genuine dispute of material fact remains as to whether the deep discount constitutes proceeds to which Plaintiffs' judgment lien attached.  The deep discount is not proceeds, and Plaintiffs' judgment lien did not attach to same.  Accordingly, Plaintiffs' request for turnover of the $200,000 "deep discount" is dismissed with prejudice.

### 2. Fraudulent transfer pursuant to 11 U.S.C. §§ 544(b)(1) and 548 and Texas Business and Commerce Code sections 24.005(a) and 24.006(a)–(b)

Before diving into the parties' arguments and evidence regarding Plaintiffs' causes of action for fraudulent transfer, the Court addresses a glaring, yet unidentified issue with Plaintiffs' claims.  Sections §§ 544(b)(1) and 548 and Texas Business and Commerce Code, more commonly known as the Texas Uniform Fraudulent Transfer Act ("*TUFTA*"), sections 24.005(a) and 24.006(a)–(b) all apply in circumstances where a claimant is seeking to avoid a fraudulent transfer of an interest of the debtor.[205]  Here, Laughlin was the transferor of the Property, but Williams is the debtor.  Unless the Property was somehow an interest of Williams, which the Court found above that it was not, then the statutes under which Plaintiffs bring their fraudulent transfer claims are inapplicable.  In response to Plaintiffs' § 542 claim, Defendants challenge whether the Property is property of Williams's bankruptcy estate, but Defendants never contest the applicability of these

---

[205] 11 U.S.C. § 544(b)(1) ("the trustee may avoid any transfer of an interest of the debtor in property); 11 U.S.C. § 548 ("The trustee may avoid any transfer . . . of an interest of the debtor in property"); TEX. BUS. & COM. CODE § 24.005(a) ("A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . ."); TEX. BUS. & COM. CODE § 24.006(a) ("A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . ."); TEX. BUS. & COM. CODE § 24.006(b) ("A transfer made by a debtor is fraudulent as to a creditor . . . .").

fraudulent transfer statutes. Because Defendants did not contest the applicability of these fraudulent transfer statutes, the Court will nevertheless consider the arguments and evidence raised in Defendants' Motion as if such statutes are applicable.

### a. Whether the Property was an "asset" under the Texas Uniform Fraudulent Transfer Act

Plaintiffs' second count alleges that Laughlin's sale of the Property to the Farrises for less than reasonably equivalent value was a fraudulent transfer and is voidable pursuant to 11 U.S.C. § 544(b)(1) and TUFTA.[206] Section 544(b)(1) of the Bankruptcy Code declares, ". . . a trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable . . . ." The "applicable law" here is TUFTA sections 24.005(a) and 24.006(a)–(b). Those sections spell out the elements a claimant must satisfy to prove a transfer is fraudulent as to a present or future creditor under Texas law.[207] Section 24.002 provides the definitions governing those sections. A transfer is "every mode . . . of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or encumbrance."[208] Section 24.002(2)(B) defines an asset as "property of a debtor, but the term does not include: . . . property to the extent it is generally exempt under nonbankruptcy law."[209] Property that is exempt under non-bankruptcy law is explicitly excluded.[210]

As movants, Defendants bear the initial burden to show the court that evidentiary support for one or more material elements of Plaintiffs' claim for fraudulent transfer pursuant to 11 U.S.C.

---

[206] ECF No. 4 at 9–10.
[207] *See* TEX. BUS. & COM. CODE §§ 24.005(a), 24.006(a)–(b).
[208] *Id.* § 24.002(12).
[209] *Id.* § 24.002(2)(B).
[210] *In re Villareal*, 2019 Bankr. LEXIS 56, *6 (Bankr. N.D. Tex. Jan. 8, 2019) (quoting *Duran v. Henderson*, 71 S.W.3d at 842 (citing TEX. BUS. & COM. CODE §§ 24.002(2), 24.002(12), 24.005)).

§§ 544(b)(1) and 548 and TUFTA sections 24.005(a) and 24.006(a)–(b) is lacking.[211]  Defendants

point out that the relevant sections of TUFTA apply to transfers of "assets" and that the definition

of assets explicitly excludes property exempt under non-bankruptcy law.[212]  Defendants continue,

"it is well settled case law that a conveyance of exempt property may not be attacked on the ground

that it was made in fraud of creditors."[213]  Quoting *Duran*, Defendants assert that "[t]he rational

[sic] for this rule is that because the law already has removed the homestead property from the

reach of creditors, the conveyance of the property, whether fraudulent or not, does not deprive the

creditors of any right they had against the property."[214]  They conclude that because the Property

was Laughlin's homestead, it was not an asset pursuant to TUFTA.[215]

Defendants correctly quote the *Duran* case, which summarizes Texas law.[216]  A debtor's

conveyance of exempt property causes no detriment to creditors because that property was already

removed from the reach of creditors.[217]  "It follows that a debtor may sell exempt property or give

it away and pass title against his creditors."[218]  An exception to this general rule exists, however.

A transfer of exempt property to a creditor may be challenged where the property transfer is a

sham transaction that allows the debtor to retain rights in the property while ending its homestead

use.[219]

This Court already found that the Property was Laughlin's homestead pursuant to Texas

law.  The Court also found that the Property was Laughlin's homestead until he sold it to the

Farrises and, as a matter of law, that the Farrises can assert Laughlin's title against Plaintiffs'

---

[211] *See Celotex Corp.*, 477 U.S. at 325.
[212] ECF No. 27 at 14.
[213] *Id.*
[214] *Id.* (quoting *Duran v. Henderson*, 71 S.W.3d 833, 843 (Tex. App.—Texarkana 2002, pet. denied)).
[215] *Duran*, 71 S.W.3d at 843.
[216] *Duran*, 71 S.W.3d at 843.
[217] *Id.*
[218] *Id.*
[219] *Id.*

claims.  Due to the homestead nature of the Property, the Property was not an "asset" under TUFTA when it was conveyed[220] and Laughlin was free to convey it to whomever[221] as success-fully demonstrated by Defendants.  The burden shifts to Plaintiffs to show that the sale to the Farrises was a sham transaction and that Laughlin retained rights in the Property despite ending its homestead use, to prove that the sale of the Property to the Farrises falls within the exception to the general rule.[222]

Plaintiffs make no such effort.  Plaintiffs neither claim nor submit any evidence that Laugh-lin retained rights in the Property after its conveyance to the Farrises.  Plaintiffs instead make the bald assertion that "Laughlin's sale of the Property to the [Farrises was] a sham transaction."[223] Plaintiffs provide no competent summary judgment evidence to support their claim.  Accordingly, the Property was not an "asset" under TUFTA and its conveyance to the Farrises was lawfully within Laughlin's sole discretion.

### b.  Whether the TUFTA statutes of limitation apply to Plaintiffs' fraudulent transfer claim

Defendants maintain that even if this Court finds that a fact issue remains as to the home-stead status of the Property, Plaintiffs' fraudulent transfer cause of action pursuant to TUFTA fails because it is barred by the statute of limitations.[224]  Defendants offer the deed of trust to the Farrises as evidence that the Property was sold to them on April 14, 2015,[225] and Plaintiffs' Complaint filed November 24, 2019,[226] in asserting that pursuant to TUFTA section 24.010, Plaintiffs had four

---

[220] See *supra* section V(A)(1)(a).
[221] *See Duran*, 71 S.W.3d at 843.
[222] *See id.*
[223] ECF No. 32 at 21.
[224] ECF No. 27 at 15.
[225] ECF No. 26 Ex. 11.
[226] ECF Nos. 1, 4.

years from the sale to bring a fraudulent transfer claim and did not do so until 224 days after the statute of limitations ran.[227]

To be clear, TUFTA section 24.010 sets out various statutes of limitations based on which TUFTA section a claim falls under.  For claims under section 24.005(a)(1), a claimant has four years after the transfer to bring the claim or one year after the transfer could reasonably have been discovered.  Under sections 24.005(a)(2) and 24.006(a), a claimant has four years from the date of transfer.  Lastly, under section 24.006(b), a claimant has one year from when the transfer was made.

It is unnecessary for the Court to consider Defendants' statute of limitations argument or Plaintiffs' response to that argument because Defendants satisfied their burden to prove that the Property is not an "asset" of Williams's bankruptcy estate, a critical element of Plaintiffs' fraudulent transfer claim.  Plaintiffs were unable to overcome Defendants' summary judgment evidence. Therefore, the statute of limitations argument is moot because TUFTA does not apply to Laughlin's transfer of the Property.  The Property is not an asset of Williams's bankruptcy estate and Laughlin was free to transfer the Property to the Farrises, taking its conveyance outside the realm of 11 U.S.C. § 544(b)(1) and TUFTA sections 24.005(a) and 24.006(a)–(b).

However, even if the Property were an asset of Williams's bankruptcy estate, Defendants still prevail.  Defendants' evidence demonstrates that Plaintiffs brought their fraudulent transfer claim after the statute of limitations ran under TUFTA.[228]  The burden shifts to Plaintiffs to identify specific evidence in the record that Plaintiffs' claim was brought before the statute of limitations expired.  Plaintiffs argue that the state court receiver filed a cause of action for fraudulent transfer in state court on April 11, 2019, before the four year statute of limitations ran, and when Williams

---

[227] ECF No. 27 at 15 (citing TEX. BUS. & COM. CODE § 24.010).
[228] ECF No. 26 Ex. 11; ECF No. 4.

filed for bankruptcy, that cause of action became property of the estate.[229]  Plaintiffs provide no evidence of that state court suit; they merely allege that it was filed.[230]  Thus, even if Plaintiffs are correct that the action filed in the state court by the receiver became property of Williams's bankruptcy estate, which this Court does not decide, Plaintiffs have not satisfied their summary judgment burden to raise specific evidence establishing that a genuine dispute of material fact exists as to whether Plaintiffs' fraudulent transfer cause of action was filed after the TUFTA statute of limitations.  Accordingly, Plaintiffs' fraudulent transfer cause of action pursuant to 11 U.S.C. § 544(b)(1) and TUFTA sections 24.005(a) and 24.006(a)–(b) is dismissed with prejudice.

### c.  Whether Plaintiffs' claim pursuant to 11 U.S.C. § 548 is time barred

Defendants contend they are entitled to summary judgment as a matter of law on Plaintiffs' fraudulent transfer claim under § 548 because Plaintiffs' claim was not filed within two years after the Property was transferred to the Farrises.[231]  Defendants again offer the deed of trust to the Farrises[232] and Plaintiffs' Complaint[233] to establish that Plaintiffs' Complaint was filed 954 days after the two year statute of limitations ran.[234]  Defendants incorrectly interpret § 548.

Section 548 permits a trustee to "avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, *that was made or incurred within 2 years before the date of the filing of the petition . . . .*"[235]  Defendants are not correct that a claim under § 548 must come within two years of the transfer.  Rather, the transfer must have occurred in the two years preceding the debtor's bankruptcy petition.[236]  Williams's bankruptcy was filed on May

---

[229] ECF No. 32 at 30.
[230] *Id.*; *see also* ECF No. 35 at 7.
[231] ECF No. 27 at 17.
[232] ECF No. 26 Ex. 11.
[233] ECF Nos. 1, 4.
[234] ECF No. 27 at 17.
[235] 11 U.S.C. § 548(a)(1) (emphasis added).
[236] *Id.*

16, 2019.[237]  The Property was sold to the Farrises on April 14, 2015.[238]  Only transfers made on

or after May 16, 2017, could be avoided under § 548.

The Property was transferred seven hundred and sixty-two days before May 16, 2017, far

outside the time limitation in § 548.  The burden shifts to Plaintiffs to show that a genuine dispute

as to whether the transfer was in fact made on or after May 16, 2017.  Plaintiffs offer no evidence

or support, but argue that "§ 548 permits the Trustee to avoid only those transfers that occurred

within two (2) years before the bankruptcy filing date, it has no effect on transfers that occurred

earlier that might otherwise have qualified as fraudulent transfers."[239]  Plaintiffs' own argument

and lack of summary judgment evidence forecloses their own cause of action under § 548 because

Plaintiffs agree with Defendants that transfers occurring more than two years before a bankruptcy

filing cannot be reached under § 548.  Plaintiffs fail to satisfy their burden.  Plaintiffs' § 548 action

is time barred and thus, no genuine issue of material fact remains for trial.  Accordingly, Kyle

Kincaid Williams and Renee Arcemont Williams' cause of action for voidance of a fraudulent

transfer pursuant to 11 U.S.C. §§ 544(b)(1) and 548, and Texas Business and Commerce Code

sections 24.005(a) and 24.006(a)–(b) is dismissed with prejudice.

### 3.  Claim objection

A creditor may file a proof of claim under section 501 of the Bankruptcy Code.[240]  A cred-

itor holds a "claim" against a debtor if it has a "right to payment, whether or not such right is

reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured or unsecured."[241]  A claim is deemed allowed unless a party

---

[237] Bankr. ECF No. 1.
[238] ECF No. 34 Ex. 11.
[239] ECF No. 32 at 31.
[240] *See* 11 U.S.C. § 501; *see also* FED. R. BANKR. P. 3003.
[241] 11 U.S.C. § 101(5)(A).

in interest, including a debtor, objects to the claim.[242]  Indeed, the timely filing of a proof of claim is *prima facie* evidence of its validity.[243]

In their Complaint, Plaintiffs object to Defendants proof of claim in the amount of $92,589.30.[244]  Plaintiffs object to the claim's enforceability alleging that it is contingent or unmatured.[245]  Defendants' Motion makes no arguments addressing Plaintiffs' claim objection, but in their first argument section heading, Defendants write "[Plaintiffs'] claims for turnover, fraudulent transfer, and *claim objection* all fail because the Property was Gary Laughlin's homestead when he conveyed it to the Farrises."[246]  Likewise, Plaintiffs do not address the claim objection in their response to Defendants' Motion.  Since neither party submitted any competent summary judgment either way, factual issues remain.  Thus, Plaintiffs' claim objection is reserved for trial.

### B. Whether Defendants are entitled to summary judgment on their counterclaims to quiet title and for declaratory judgment.

In their original answer to Plaintiffs' Complaint, Defendants asserted four counterclaims: (1) quiet title; (2) slander of title; (3) tortious interference with contractual relations; and (4) declaratory judgment.[247]  In their Motion for Partial Summary Judgment, Defendants seek summary judgment as to claims 1 and 4.[248]  Defendants bear the burden of proof at trial as to their claims for quiet title and declaratory judgment.  Because Defendants are the movants herein, they "must establish beyond peradventure *all* of the essential elements of their claim[s],"[249] to warrant judgment in their favor.

---

[242] *See id.* § 502(a).

[243] Fed. R. Bankr. P. 3001(f).

[244] ECF No. 4 at 11.

[245] *Id.* (citing 11 U.S.C. § 502(b)(1)).

[246] ECF No. 27 at 6 (emphasis added).

[247] ECF No. 17 at 15–18.

[248] ECF No. 27 at 17–18.

[249] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

To prevail on their quiet title action, Defendants must prove that Plaintiffs: (1) created a hindrance to Defendants' title, having the appearance of a better right to title than Defendants own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid.[250]  To prevail on their declaratory judgment action, Defendants must prove the elements of their quiet title claim and show that the instruments recorded by Plaintiffs or the state court receiver in Chambers County, Texas, are invalid.[251]  If Defendants satisfy their burden of establishing all elements of their claims beyond peradventure, the burden then shifts to Plaintiffs to identify "specific facts showing there is a genuine issue for trial."[252]

### 1.  Quiet title

Defendants assert that they are entitled to judgment as a matter of law that the Farrises took the Property free and clear of Plaintiffs' judgment lien when they purchased the Property from Laughlin because the Property was Laughlin's homestead when conveyed.[253]  The "Notice of Appointment of Receiver, Including Receiver's Exclusive Right to Note Proceeds" ("*Notice of Receiver*") that was filed in the Chambers County Property Records, clouding Defendants' title to the Property, Defendants continue, was based on an invalid claim resulting in a wrongful cloud on title.[254]  A suit to quiet title is used to declare invalid or ineffective an adverse party's claim to title.[255]  The Court must address both Plaintiffs' judgment lien and the Notice of Receiver.

### a.  Whether Plaintiffs' judgment lien in an invalid or ineffective claim to the Property

---

[250] *Martinez v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 16846, at *17 (citing *Ellis v. Buentello*, 2012 Tex. App. LEXIS 6803, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.)).

[251] *See Rex-Tech Int'l, LLC v. Rollings (In re Rollings)*, 451 Fed. App'x. 340, 345 (5th Cir. 2011) (finding that in a declaratory action, the party seeking relief bears the burden of proof); *see also In re Wiggains*, 2015 Bankr. LEXIS 1121, at *26 (Bankr. N.D. Tex. Apr. 6, 2015) (finding that the burden of proof as to issues of property interests was on the party seeking declaratory judgment as the party raising an affirmative assertion on an issue).

[252] FED. R. CIV. P. 56(e).

[253] ECF No. 27 at 18.

[254] *Id.* (citing ECF No. 26 Ex. 17).

[255] *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Plaintiffs' Abstract of Judgment, submitted as an exhibit by both parties, was recorded in Chambers County, Texas, on July 20, 2009.[256]  That Abstract made no mention of the Property and the lien created thereby could not have attached to the Property because such a lien attaches only to non-exempt property of the judgment debtor.[257]  Only property in the county where the abstract is recorded and indexed is subject to the lien.[258]

The Abstract of Judgment created a lien on only non-exempt property in Chambers County when filed.[259]  Defendants offer the Abstract of Judgment and the evidence discussed above that the Property was exempt as Laughlin's homestead, to show that the Abstract of Judgment did not create a valid lien on the Property by operation of law.[260]  In Texas, judgment liens on homesteads are generally invalid, unless a homestead ceases to be, such as by abandonment, death, or aliena-tion.[261]  As found above, the Property was Laughlin's homestead at the time he conveyed it to the Farrises and that homestead was not forfeited by abandonment, alienation, or death.[262]

### b.  Whether the Notice of Receiver is an invalid or ineffective claim to the Prop-erty

The Notice of Receiver, submitted by both parties as an exhibit, was filed in Chambers County on December 15, 2015, eight months after the Farrises purchased the Property.[263]  The Notice names both Laughlin and the Farrises, describes the Property and the Farris Note, and in-dicates that the state receiver "has the exclusive power and authority to take possession of all non-

---

[256] ECF No. 26 Ex. 4; ECF No. 34 Ex. 4.
[257] TEX. PROP. CODE § 52.001.
[258] *Id.*
[259] *See id.*
[260] ECF No. 26 Ex. 4; see *supra* Part V(A)(1)(a)–(b), for a discussion on the evidence establishing the homestead character of the Property and Plaintiffs' failure to prove forfeiture of that character by abandonment or alienation.
[261] *Johnson*, 160 F.3d at 1064 (quoting TEX. CONST. art. XVI § 50).
[262] See *supra* Part V(A)(1)(a)–(b), for a discussion on the homestead character of the Property and Plaintiffs' failure to prove forfeiture of that character by abandonment or alienation.
[263] ECF No. 26 Ex. 17; ECF No. 34 Ex. 20.

exempt property of [Laughlin] that is in the actual or constructive possession or control of [Laugh-lin], including notes receivables, promissory notes, all real property and deeds to real property."[264]

The Notice would turn up in any title search, be it by grantor-grantee or tract description because it was filed in Chambers County, identifies the Property, and names the parties listed in the deed to the Property.  And where "a purchaser is bound by *every* recital, reference and reser-vation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims,"[265] the Notice of Receiver, which evidences an outstanding claim, creates a hinderance on Defendants' title.[266]  Defendants contend that at the time the Notice of Receiver was filed, the Farris Note had already been paid.[267]  Defendants state that payments made to AmCap Mortgage were credited against the Farris Note and the release of lien signed by Laugh-lin was held in escrow until the AmCap Mortgage was paid.[268]  Defendants' Motion indicates that the release was never recorded in Chambers County.[269]

The only evidence Defendants offer to show the Farris Note was paid is a release of lien executed by CitiMortgage, Inc. on October 12, 2015, solely naming the original borrowers, Mela-nie and Gary Laughlin.[270]  As previously discussed, that release does not prove that the Farris Note was paid.[271]  Nevertheless, the Notice of Receiver is an ineffective claim to the Property because it  creates a lien solely on Laughlin's non-exempt property and the Property was never non-exempt because of its homestead character.  Also, at the time the Notice of Receiver was filed, the Farrises

---

[264] *Id.*
[265] *Westland Oil Dev. Corp.*, 637 S.W.2d at 908 (emphasis in original).
[266] *See Martinez*, 2013 U.S. Dist. LEXIS 16846, at *17 (citing *Ellis*, 2012 Tex. App. LEXIS 6803, at *3).
[267] ECF No. 27 at 12 (citing ECF No. 26 Exs. 14, 15).
[268] ECF No. 44 at 3, ¶ 22.
[269] ECF No. 27 at 19–20 (asking this Court to enter an order permitting the escrow officer to record the Release of Lien in Chambers County).
[270] ECF No. 26 Ex. 14.
[271] See *supra* Part V(A)(1)(c)(ii), for a discussion of the release of lien signed by CitiMortgage, Inc. and the effect of that release of lien.

owned the Property, so it was no longer property of Laughlin, exempt or non-exempt.  Significantly, the Notice itself lays claim to "note proceeds" and identifies the Farris Note by instrument number and amount.  It does not create a valid claim to the Property for Plaintiffs.  No genuine issue of material fact remains as to Defendants' ownership of the Property, free and clear of any legal or equitable interest claimed by Plaintiffs.

Accordingly, Penney Elaine Farris, Matthew Farris, and Patrick Farris's counterclaim for suit to quiet title to the real property located at 9706 Ellen Drive, Baytown, Texas 77521 is granted.  The lien created by Kyle Kincaid Williams and Renee Arcemont Williams's Abstract of Judgment in the amount of $477,380.47, plus pre-judgment interest at a rate of 5% per annum commencing on December 6, 2006, and attorney's fees in the amount of $35,000, filed for record in Chambers County on July 20, 2009, with the County Clerk of Chambers County, under document number 2009-46382, is invalid and unenforceable as to the real property located at 9706 Ellen Drive, Baytown, Chambers County, Texas 77521, and title is quieted in Penney Elaine Farris, Matthew Farris, and Patrick Farris.  Kyle Kincaid Williams and Renee Arcemont Williams, and any person claiming under them has no estate, right, title, lien, or interest in or to the real property or any part of such property.

## 2.  Declaratory judgment

Defendants' Motion also seeks a declaratory judgment under the Texas Declaratory Judgment Act ("*TDJA*") holding that: (a) Defendants own the Property free and clear of all claims asserted by Plaintiffs and that Plaintiffs have no legal or equitable interest in the Property whatsoever; (b) all notices or other instruments that Plaintiffs and their court appointed receivers recorded in the Official Public Records of Real Property of Chambers County, Texas and served on Stewart Title Company, the escrow officer, and any other persons relating to the Property are null and void

for all purposes; and (c) the escrow officer may proceed to record the Release of Lien executed by Laughlin in the Official Public Records of Real Property of Chambers County, Texas.[272] Defendants seek this judgment based on their assertion that the Property passed free and clear of Plaintiffs' judgment lien to the Farrises.[273]

As a preliminary matter, the Court must sua sponte address whether the TDJA applies in federal court. The TDJA creates no substantive rights; it is a procedural vehicle for resolving substantive issues.[274] The TDJA's purely procedural nature makes it inapplicable in federal court.[275] Instead, its federal counterpart 28 U.S.C. § 2201, the Declaratory Judgment Act, applies.[276] When cases invoking the TDJA are removed to federal court, those cases are treated as if they were originally filed under the federal DJA.[277] The issue presented by this case is that it was not removed to this Court, it originated here.[278] This Court finds that at the summary judgment stage where a party seeks a declaratory judgment pursuant to the TDJA in a proceeding originally filed in the bankruptcy court, this Court will treat that case as if it was filed under the federal DJA.[279]

---

[272] ECF No. 27 at 19–20.

[273] *Id.* at 19.

[274] *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (citing *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied)).

[275] *E.g.*, *Utica Lloyd's*, 138 F.3d at 210; *United Prop. & Cas. Ins. Co. v. Davis*, 2019 U.S. Dist. LEXIS 146330, at *18 (S.D. Tex. Aug. 28, 2019); *Sims v. RoundPoint Mortg. Servicing Corp.*, 2018 U.S. Dist. LEXIS 40978, at *28 (E.D. Tex. Mar. 13, 2018); *Amaya v. City of San Antonio*, 980 F. Supp. 771, 784 (W.D. Tex. 2013).

[276] See cases cited *supra* note 275. Defendants erroneously cite *Garza v. Coates Energy Tr. (In re Garza)*, 90 F. App'x 730, 733 (5th Cir. 2004) to support their declaratory judgment action. *In re Garza* is an unpublished opinion with no precedential value pursuant to Fifth Circuit Rule 47-5. As explained in *Durrschmidt v. Frost Nat'l Bank (In re R&K Fabricating)*, 2012 Bankr. LEXIS 5459, at *7, *In re Garza* conflicts with the Fifth Circuit's result in *Utica* that the TDJA is procedural and does not apply in federal court. *Utica* controls because it was the earliest of conflicting panel decisions. *Id.* (citing *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2006)).

[277] *Harmon v. Lighthouse Capital Funding, Inc. (In re Harmon)*, 2011 Bankr. LEXIS 1443, *12 (Bankr. S.D. Tex. Apr. 14, 2011) (citations omitted).

[278] ECF No. 17.

[279] *See In re R&K Fabricating*, 2012 Bankr. LEXIS 2636 (Bankr. S.D. Tex. June 11, 2012) In *In re R&K Fabricating*, the trustee filed a declaratory judgment action pursuant to 11 U.S.C. §§ 362, 502, 506, 547, 549, and 550, the TDJA, and Federal Rules of Bankruptcy Procedure 3007 and 7001(2) "seeking to establish the extent, priority and validity of [the defendants'] liens" and legal fees. Case No. 12-03177, ECF No. 45 at 1–2. The trustee sought summary judgment on his declaratory action against one defendant. *Id.* ECF No. 42. Although the trustee never invoked 28 U.S.C.

28 U.S.C. § 2201(a) provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  For a declaratory judgment action to survive, a justiciable substantive claim must exist.[280]  Courts wield great discretion in determining whether to entertain an action under the federal DJA.[281]  In the Fifth Circuit, courts "typically dismiss declaratory judgment counterclaims that are mirror images of claims or that raise issues that turn on disputed fact that will be resolved in the underlying suit."[282]

Here, Defendants' declaratory judgment action is based on their quiet title claim and the controversy between the parties as to the validity of the Notice of Receiver.[283]  A genuine issue of material fact  exists as to whether the Farris Note was paid.[284]  In Texas, proceeds from the sale of a homestead property are exempt for only six months following the sale.[285]  An order was issued by the 129th District Court in Harris County, Texas, ordering turnover of Laughlin's non-exempt assets and appointing a receiver.[286]  Those non-exempt assets included the Farris Note.  Any inter-est Plaintiffs have in funds due under the Farris Note encumber those funds, not the Property.

---

§ 2201, the court held that "[a] declaratory judgment action in federal court is governed by the Federal Declaratory Judgment Act" and granted the trustee's motion to summary judgment against the defendant as to the trustee's claim for declaratory judgment but denied the trustee's claim for legal fees and his request for disallowance of the defendant's claim.  *In re R&K Fabricating*, 2012 Bankr. LEXIS 2636, at *26, *28.

[280] *Sims*, 2018 U.S. Dist. LEXIS 40978, at *28 (citing *Collin County, Texas v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990); *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *Johnson v. Citigroup Mortg. Loan Trust, Inc.*, 2017 U.S. Dist. LEXIS 123411 (W.D. Tex. Aug. 3, 2017); *Ayers v. Auror Loan Servs., LLC*, 787 F. Supp. 2d 451, 457 (E.D. Tex. May 27, 2011)).

[281] *United Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 146330, at *19 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).

[282] *Id.* (citing several cases within the Fifth Circuit where courts dismissed declaratory judgment actions because the issues would be resolved as part of the case regardless).

[283] *See* ECF No. 27 at 19–20.

[284] See *supra* Part V(A)(1)(c)(ii), for a discussion on the evidence provided by Defendants regarding the Farris Note.

[285] TEX. PROP. CODE § 41.001(c) (declaring that ". . .  proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.").

[286] ECF No. 26 Ex. 16.

Therefore, the Notice of Receiver as it relates to the Property is invalid.  Likewise, as detailed above, Plaintiffs' judgment lien is invalid as it relates to the Property.  Accordingly, Plaintiffs action seeking declaratory judgment that "all notices or other instruments that Plaintiffs and their court appointed receivers recorded in the Official Public Records of Real Property of Chambers County, Texas and served on Stewart Title Company, the escrow officer, and any other persons relating to the Property are null and void for all purposes" is granted.  The Court finds that neither Plaintiffs' judgment lien nor the Notice of Receiver have any legal validity as to the Property.

However, the Court does not find that Defendants declaratory judgment request that "the escrow officer may proceed to record the Release of Lien executed by Laughlin in the Official Public Records of Real Property of Chambers County, Texas" should be granted at the summary judgment stage.  As stated, there remains a genuine dispute as to whether the Farris Note was paid in full.  That issue will be resolved at trial.  Accordingly, Defendants' request that "the escrow officer may proceed to record the Release of Lien executed by Laughlin in the Official Public Records of Real Property of Chambers County, Texas" is denied and the issue of whether the escrow officer can record the release of lien executed by Laughlin will proceed to trial.

Lastly, Defendants' action seeking declaratory judgment that Defendants own the Property free and clear of all claims asserted by Plaintiffs and that Plaintiffs have no legal or equitable interest in the Property whatsoever is granted.  Defendants satisfied their summary judgment burden to prove they hold superior interest in the Property by offering evidence, discussed thoroughly above, that the Property was Laughlin's homestead until it was conveyed to the Farrises and that under Texas law, a purchaser may assert a homestead claimants title against a judgment lien creditor.  Plaintiffs have no legal or equitable interest in the Property because (1) Plaintiffs' judgment lien never attached to the Property and (2) any interest Plaintiffs may have in funds due under the

Farris Note encumber only those funds, not the Property.  The Court finds that Penney Elaine Farris, Matthew Farris, and Patrick Farris own the Property free and clear and that Kyle Kincaid Williams and Renee Arcemont Williams have no legal or equitable interest in the Property.

## VI.  Conclusion

An order consistent with the Memorandum Opinion will be entered on the docket simultaneously herewith.


SIGNED April 6, 2021



_____
Eduardo Rodriguez
United States Bankruptcy Judge